1   Andrew G. Watters (#237990)
    555 Twin Dolphin Dr., Ste. 300
2   Redwood City, CA 94065
    andrew@andrewwatters.com
3   (415) 261-8527

4   Attorney for Plaintiff
    Raphael Stricker

5

6

7

8              **UNITED STATES DISTRICT COURT FOR THE**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                  San Francisco Division

11  RAPHAEL STRICKER,                    Case no.

12        Plaintiff,                     COMPLAINT

13  v.                                   1.  Copyright Infringement
                                         2.  Declaratory Relief
14  SAMUEL SHOR;                         3.  Defamation
    BETTY MALONEY;
15  BARBARA BUCHMAN;
    INTERNATIONAL LYME AND              Jury Trial Demanded
16  ASSOCIATED DISEASES SOCIETY;
    DOES 1-10,                          Signatures by Fax
17
          Defendants.
18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.    This is a dispute among members of the International Lyme and Associated Diseases Society (ILADS) over a journal article published by Plaintiff.

2.    Essentially, the individual Defendants plagiarized Plaintiff's article for their own publication effort and also defamed Plaintiff by falsely accusing him of plagiarism.

3.    Plaintiff has suffered damage to his reputation in addition to copyright infringement.  He seeks all appropriate relief in this Court, including damages, statutory penalties, an injunction prohibiting further infringement, disgorgement of profits made by the Defendants, and attorney fees and costs.

**JURISDICTION AND VENUE**

4.    This Court has subject matter jurisdiction because the action is a copyright case under 28 U.S.C. sec. 1338(a), and the state law claims transactionally relate.

5.    This Court has personal jurisdiction over the parties, who are either residents of this State or meet the standard for the exercise of general or specific jurisdiction under the law of minimum contacts.

6.    Venue is proper in San Francisco because one of the parties, Barbara Buchman, is an agent of Defendants under 28 U.S.C. sec. 1400(a) and resides in this District.  Also, a substantial portion of the acts complained of occurred in this District, and the intentional torts referred to below were knowingly and intentionally directed at a resident of this District.  Further, there are multiple defendants in multiple Districts all committing the same wrongful acts against

Plaintiff, and there is no more appropriate venue than this District.

**PARTIES**

7.   Plaintiff Raphael Stricker ("Dr. Stricker" or "Plaintiff") is a resident of this State and this District. He is a medical doctor who specializes in Lyme and associated diseases.  Dr. Stricker has a well-known international practice focused on these diseases, based at his clinic in San Francisco. Dr. Stricker has approximately four thousand patients spread throughout the world, and he enjoys an excellent reputation for quality service and medical ability.  Dr. Stricker is a member of ILADS, is on the board of directors of ILADS, and has published numerous academic articles on Lyme and associated diseases.

8.   Defendant Samuel Shor ("Dr. Shor") is believed to be a resident of Maryland, with his office in Virginia.  He is a medical doctor and is President of ILADS.

9.   Defendant Betty Maloney ("Dr. Maloney") is believed to be a resident of Minnesota.  She is a medical doctor and is a member of ILADS, as well as an ILADS board member.

10.  Defendant Barbara Buchman ("Ms. Buchman") is a resident of this State and this District.  She is an executive with ILADS. For the purposes of the copyright claim, Ms. Buchman is an agent of Defendants under 28 U.S.C. sec. 1400(a), in that she is and was acting on behalf of Defendants in connection with the claims made in this complaint.

11.  Defendant International Lyme and Associated Diseases Society ("ILADS") is an international organization of physicians who have an interest in these disorders.  ILADS is named as a

1  defendant solely on the declaratory relief cause so that the

2  decree of authorship sought by Plaintiff will be binding on it.

3  ILADS may be found in this District.

4    12.  Plaintiff is unaware of the true identities and

5  capacities of Does 1 through 10, and therefore names these

6  persons by fictitious names pursuant to Cal. Code of Civil

7  Procedure sec. 474.  As the Does' true identities and

8  capacities are discovered, Plaintiff will amend the complaint as

9  appropriate.

10                      **GENERAL ALLEGATIONS**

11    13.  This saga began in 2013 when ILADS formed a working

12  group called the Chronic Lyme Disease Working Group ("CLD working

13  group" or "the working group").

14    14.  The original members of the working group were Dr.

15  Stricker, Dr. Dan Cameron, Dr. Betty Maloney, Dr. Chris Green,

16  Dr. Samuel Shor, and attorney Lorraine Johnson.  Dr. Cameron

17  and Ms. Johnson dropped out when it became clear that the group

18  had trouble working together, which was practically from the

19  beginning.

20    15.  The working group was formed to write a paper on

21  Chronic Lyme Disease.  Over the following two years, the working

22  group collaborated to some degree and ultimately turned out an

23  unpublished manuscript on Chronic Lyme Disease in December 2015.

24  However, this material was never published and sat on the shelf

25  unused.  It became obsolete in the face of new data, studies, and

26  publications that were published in the field.

27    16.  In December 2016, Dr. Stricker took the initiative and

28  completely rewrote and reorganized the obsolete 2015 paper, also

updating it to match the latest data and knowledge in the field. Ms. Melissa Fesler, a nurse practitioner, assisted Dr. Stricker with the rewrite.  The rewrite was known to and authorized by the ILADS working group, although Dr. Stricker's original work belonged to him, not ILADS.

17.  In late December 2016 through early January 2017, Dr. Stricker shared his original manuscript with three other ILADS members (Dr. Robert Bransfield, Dr. Joe Burrascano, and Dr. Steve Phillips), plus the original CLD working group.  Drs. Bransfield, Burrascano, and Phillips endorsed the paper with minor changes, but the others were unable to agree.

18.  On January 9, 2017, Dr. Stricker asked for a "yes or no" response from each member of the working group as to whether the paper should be published in that form.  Dr. Stricker also asked anyone who wanted to be deleted as an author to advise him.

19.  On January 11, 2017, Dr. Maloney said "no" to publication, but suggested that Dr. Stricker publish the paper under his own name rather than that of the ILADS working group.

20.  On January 17, 2017, the working group had a telephone conference, where it was suggested that the parties agree on a later deadline for a "yes or no" to publication.  Ultimately, the parties discussed a February 2017 deadline for a "yes/no" or "go/no-go" decision.

21.  Meanwhile, Dr. Maloney was working on her own version of Dr. Stricker's article.  She shared it with the working group on February 5, 2017, but the paper was disorganized and inadequate.  The paper contained significant material lifted from Dr. Stricker's paper.

22.   Over the following days to weeks, there were serious disagreements over the articles and whether particular members of the working group wanted to be listed as authors on Dr. Stricker's article.  As this process was occurring, Dr. Stricker was making minor changes or tweaks to his paper in anticipation of submitting it for publication.  Ultimately, Dr. Stricker, Ms. Fesler, Dr. Bransfield, and Dr. Phillips were listed as authors on Dr. Stricker's paper.  Everyone knew or should have known that Dr. Stricker was going to submit the article.  Dr. Stricker submitted his manuscript to Dove Press on February 14, 2017.

23.   At the same time, Dr. Shor was working on a version of Dr. Maloney's article, itself a version of Dr. Stricker's work. Dr. Shor stated on February 19, 2017 that he wanted to submit his version of the paper for publication.  The Defendants ignored the previously discussed February 2017 deadline for the "yes/no" decision on Dr. Stricker's paper.

24.   In early March 2017, Dr. Stricker's manuscript went through peer review and was conditionally accepted for publication by Dove Press.

25.   In March 2017, learning of the acceptance of Dr. Stricker's paper, Dr. Shor contacted Dove Press and demanded to have Dr. Stricker's paper withdrawn because, according to Dr. Shor, it was not an "authorized" version.  It became clear that Dr. Shor's objection to the peer-reviewed manuscript had no basis.  There was no agreement on authorship, and Dr. Shor did not own the manuscript.  Dr. Stricker had rewritten, reorganized, and re-released an obsolete version of the manuscript with the permission or consent of at least a majority of those involved,

and the new paper was original.  Dr. Shor had also already rejected the opportunity to sign on as a co-author multiple times, as recently as February 2017 when he ignored the deadline for a "yes/no" decision on author credit.  Thus, Dr. Shor had absolutely no claim to the manuscript.

26.  Dr. Stricker, in an effort to resolve the impasse with Dr. Shor on the Dove Press manuscript, offered to have Dr. Shor listed as a co-author.  Dr. Shor responded by demanding to be the first author on the paper, and secretly contacting Dove Press in an effort to substitute Dr. Shor's non-peer-reviewed paper in place of Dr. Stricker's already peer-reviewed paper.  This effort to substitute Dr. Shor's paper for Dr. Stricker's paper was a violation of ethical rules that apply to medical journals.

27.  As part of the rejected deal with Dove Press, Dr. Shor obtained a copy of Dr. Stricker's peer-reviewed manuscript from Dr. Stricker in March 2017.  Dr. Shor and Dr. Maloney then began to plagiarize parts of Dr. Stricker's manuscript.  As an example, there is a reference to "700 peer-reviewed articles" in Dr. Stricker's manuscript, but this did not appear in Dr. Shor's and Dr. Maloney's manuscript.  Later on, this reference appeared in Dr. Shor's and Dr. Maloney's manuscript.  It could only have come from Dr. Stricker's manuscript after those authors had seen Dr. Stricker's manuscript.

28.  One other important fact is that Dr. Maloney's manuscript as revised by Dr. Shor contained incorrect data points, which is one reason it was not ready for submission.  Those data points were available from Dr. Stricker's manuscript because Ms. Fesler had added them.  Dr. Shor initially did not

1  have access to those data points, and the correct data points are

2  absent from Dr. Shor's and Dr. Maloney's initial manuscript from

3  February 2017.  So when Dr. Shor and Dr. Maloney submitted their

4  manuscript, either it contained incorrect data or it contained

5  data that was plagiarized from Dr. Stricker's manuscript in March

6  2017.

7       29.  In April 2017, as a result of Dr. Shor's meddling, Dove

8  Press rejected both Dr. Stricker's article and Dr. Shor's version

9  of Dr. Stricker's article.

10      30.  Also in April 2017, Dr. Stricker submitted his and

11 Ms. Fesler's paper to Chronic Diseases International ("CDI"),

12 a journal published by Austin Publishing.  It should be noted

13 that Dr. Stricker and Ms. Fesler listed their affiliation with

14 ILADS as part of the submission process, because they were both

15 members of ILADS and wanted to note this affiliation in good

16 faith.  Dr. Stricker and Ms. Fesler did not indicate that the

17 publication was an official ILADS publication, contrary to later

18 false accusations from the Defendants.  It was up to the journal

19 to decide how to list the affiliation.

20      31.  In any event, on April 25, 2017, CDI accepted Dr.

21 Stricker's and Ms. Fesler's manuscript for publication.  On May

22 3, 2017, Dr. Stricker's and Ms. Fesler's manuscript was published

23 in the CDI journal.  A copy of the published paper is attached as

24 Exhibit A.

25      32.  Shortly after publication of Dr. Stricker's paper, Dr.

26 Shor saw Dr. Stricker's press release on the paper and contacted

27 CDI demanding retraction of Dr. Stricker's paper, because Dr.

28 Shor claimed it was plagiarized.

33.  On May 9 and 10, 2017, Dr. Stricker sent web links about the paper to a private email group in an effort to get the word out about his article.  Dr. Maloney was part of this group and responded by accusing Dr. Stricker of plagiarism and theft of intellectual property in a series of email exchanges.

34.  On May 10, 2017, Ms. Buchman telephoned all the board members of ILADS and told them that Dr. Stricker had plagiarized a paper that was not ready to submit, that "they" had tried to prevent Dr. Stricker from publishing it on a first attempt and had succeeded, but that Dr. Stricker went ahead and published the paper anyway, and without authority.  Ms. Buchman continued by saying that the ILADS brand was tarnished by Dr. Stricker.

35.  On or about May 10, 2017, Dr. Stricker was removed from the ILADS conference in Paris, where he was scheduled to speak. Ms. Buchman sent an email to Dr. Stricker informing him of his removal from the agenda.

36.  On May 12, 2017, Dr. Stricker sent an email message to the ILADS Yahoo group announcing his and Ms. Fesler's paper. In response, Ms. Buchman sent a defamatory email to the group discrediting Dr. Stricker and the paper.

37.  Over the following week, various emails and defamatory communications spread throughout ILADS, culminating in an ILADS attorney sending a grossly inaccurate demand letter to Dr. Stricker and Ms. Fesler.  Dr. Stricker responded with an attorney letter denying the allegations, to which there was no response from the ILADS attorney.

38.  In late May 2017, CDI withdrew Dr. Stricker's paper from publication due to Defendants' defamatory interference.

1   Apparently not satisfied with this, Defendants are continuing

2   to attempt to publish their own, plagiarized version of Dr.

3   Stricker's paper.  A copy of the February 2017 initial version of

4   Defendant's manuscript as discovered by Dr. Stricker is attached

5   as Exhibit B.  This action followed.

6                   **FIRST CAUSE OF ACTION**

7                   **COPYRIGHT INFRINGEMENT**

8    (Raphael Stricker v. Samuel Shor, Betty Maloney, and Does 1-10)

9        39.  Plaintiff incorporates the above paragraphs by

10  reference.

11       40.  Through the foregoing course of conduct, Defendants

12  violated 17 U.S.C. sec. 501.  Specifically, by plagiarizing

13  Plaintiff's article and submitting a plagiarized version for

14  publication, Defendants violated multiple of the exclusive

15  author's rights enumerated in 17 U.S.C. sec. 106 through

16  122, including but not limited to the exclusive rights of

17  reproduction, attribution, and publication.

18       41.  Plaintiff has suffered damages of unknown but large

19  magnitude from Defendants' wrongful acts.

20       42.  Wherefore, Plaintiff prays for judgment as set forth

21  below in the prayer.

22                  **SECOND CAUSE OF ACTION**

23                  **DECLARATORY RELIEF**

24   (Raphael Stricker v. Samuel Shor, Betty Maloney, International

25       Lyme and Associated Diseases Society, and Does 1-10)

26       43.  Plaintiff incorporates the above paragraphs by

27  reference.

28       44.  As indicated in the statement of facts, there

1  exists now a controversy among the parties as to authorship of

2  Plaintiff's article, as well as Defendants' article.

3     45. Pursuant to California Code of Civil Procedure sec.

4  1060, the parties are interested under these written instruments

5  and Plaintiff desires a judicial declaration of the parties'

6  rights and authorship in these writings.

7     46. Wherefore, Plaintiff prays for judgment as set forth

8  below in the prayer.

9                        **THIRD CAUSE OF ACTION**

10                          **DEFAMATION**

11  (Raphael Stricker v. Samuel Shor, Betty Maloney, Barbara Buchman,

12                        and Does 1-10)

13     47. Plaintiff incorporates the above paragraphs by

14  reference.

15     48. Defendants falsely accused Plaintiff of plagiarism

16  in a series of email messages, online discussion board posts,

17  phone calls, and in-person meetings in 2017. A sample of these

18  defamatory materials showing the dates, times, and particular

19  Defendants involved with the communications is attached as

20  Exhibit C. It should be noted that this is only the portion of

21  communications that Plaintiff has been able to discover so far;

22  he believes there are many more defamatory communications between

23  and among the Defendants, both shared inside and outside the

24  group of Defendants. By their very nature, these communications

25  are more within the knowledge of Defendants than Plaintiff, and

26  Plaintiff will seek early discovery of these materials.

27     49. The defamatory statements damaged Plaintiff's

28  reputation both professionally and academically, in that

Plaintiff (1) expects to continue treating Lyme and associated disease patients for many more years in his career, and (2) expects to continue publishing academic articles on Lyme and associated diseases, just as he has in the past.

50.   The false accusations of plagiarism have been made public in online forums as well as among the ILADS community.  As a result, Plaintiff's article was retracted by the CDI journal and deleted from the journal website.  Plaintiff expects he will never be able to publish any article in a journal ever again, even if he wins this case, because of the effect of mere accusations of plagiarism.  In addition, once the patient numbers are in, Plaintiff expects to see a drop in his patient volume over the coming months to years because patients do not want to go to doctors who are accused of plagiarism, even if those accusations are later proved false.

51.   Plaintiff suffered special damages as well as general damages due to the stress, anxiety, humiliation, and mental anguish from being falsely accused of plagiarism.  Because the conduct was intentional, Plaintiff also seeks punitive damages.

52.   Wherefore, Plaintiff prays for judgment as set forth below in the prayer.

**PRAYER**

1.   Special damages according to proof, and not less than one million dollars.

2.   General damages according to proof.

3.   Punitive damages according to proof.

4.   Statutory penalties according to law.

5.   Disgorgement of all profits made by Defendants with

1 | infringing products.

2 |     6.    A permanent injunction prohibiting further copyright

3 | infringement, including but not limited to the publication of the

4 | Defendants' version of Plaintiff's article.

5 |     7.    A judicial decree finding that Plaintiff's work is

6 | original and not plagiarized from Defendants' work.

7 |     8.    A judicial decree finding that Defendants' work is not

8 | original and is plagiarized from Plaintiff's work.

9 |     9.    Attorney fees and costs.

10 |                         **DEMAND FOR JURY**

11 |     Plaintiff requests a trial by jury on all claims so triable.

12 |

13 |     Date: June 13, 2017                    *Andrew Watters*
                                        _____
14 |                                         Andrew G. Watters, Esq.
                                        Attorney for Plaintiff
15 |                                         Raphael Stricker